IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **CHARLES BARRETT**, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 11 C 6000 |
| **LIFE INSURANCE COMPANY OF NORTH AMERICA**, et al., | ) ) ) ) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

This Court's June 14, 2012 memorandum order ("Order") ruled that certain areas of discovery were available to Charles Barrett ("Barrett") as an ERISA plaintiff seeking to overturn an employee benefit plan's decision to deny him benefits. With defendants' motion to reconsider that decision having been filed and briefed by the litigants, this memorandum opinion and order takes a fresh look at that question.

**Background of the Case**

Barrett filed a claim for benefits from his long-term disability plan, the Aon Corporation Long Term Disability Plan (the "Plan"). Life Insurance Company of North America ("LINA") both insured and administered the Plan. After it had rejected Barrett's claim for benefits, he sued both the Plan and LINA to enforce his rights under the Plan, invoking ERISA §502(a)(1)(B) (29 U.S.C. §1132(a)(1)(B)).

Soon after Barrett filed his Complaint, the Plan and LINA moved for a protective order limiting discovery. Such cases as Semien v. LINA, 436 F.3d 805 (7th Cir. 2005) hold that when

an insurance policy gives the administrator discretion to decide eligibility for benefits, a reviewing court may overturn the administrator only if its decision was arbitrary and capricious -- and in making that decision, the reviewing court ought not look beyond the administrative record. With a few exceptions that will come into focus later, material outside the administrative record is viewed as irrelevant, so that a plaintiff cannot obtain discovery beyond the administrative record.

Because Barrett's insurance policy (D. Mem. Ex. A) included such a discretion-conferring provision, the Plan and LINA sought to limit discovery. Barrett responded by pointing to an Illinois regulation, 50 Ill. Admin. Code §2001.3,[1] that prohibits discretion-granting clauses in insurance policies:

> No policy, contract, certificate, endorsement, rider application or agreement offered or issued in this State, by a health carrier, to provide, deliver, arrange for, pay for or reimburse any of the costs of health care services or of a disability may contain a provision purporting to reserve discretion to the health carrier to interpret the terms of the contract, or to provide standards of interpretation or review that are inconsistent with the laws of this State.

In the Order this Court initially resolved the dispute by finding the regulation applicable in this case, thus triggering a more generous standard of review and allowing for discovery normally provided by the Federal Rules of Civil Procedure.

But the Plan and LINA have now filed a motion to reconsider, pointing out that the Illinois regulation applies only to policies issued or renewed after July 1, 2005 -- the effective date of the regulation. Although this opinion finds that the Illinois regulation does not indeed

---

[1] That and other provisions of 50 Ill. Admin. Code ("Code") will hereafter be cited simply as "Section --."

apply for the reason advanced by defendants, it nevertheless holds that Barrett is entitled to discovery because of a potential conflict of interest on the part of the Plan's administrator.

**Section 2001.3**

In 2010 the Illinois Insurance Department issued Company Bulletin 2010-05. Barrett's counsel suggests that the Bulletin purported to apply Section 2001.3 retroactively to all insurance plans, so that the Bulletin operated to invalidate the discretionary clause in the policy. That contention, however, is too simplistic, because the argument misreads the Bulletin, which merely states that Section 2001.3 applies to plans renewed after July 1, 2005 because under Illinois state law a renewal is equivalent to the issuance of a new plan. So the relevant question is whether the Plan was or was not "renewed" or "issued" after that date.

According to the Plan and LINA, the group policy under which Barrett claims benefits was issued on January 1, 2003 and has not been renewed since (P. R. Mem. 3). If so, that would preclude application of the regulation, which (as already said) relates only to policies issued or renewed after July 1, 2005. There was, however, one amendment to the policy after Section 2001.3 became effective (P. Supp. 3) -- an amendment that changed a definition of a certain class of employees covered by the policy (id.).

If this were a question on a Contracts 101 examination, Barrett could fashion a tenable argument -- one that would earn at least a passing grade. After all, any mutually-agreed-upon modification of an existing contract is itself a new contract. Its terms are different from the parties' earlier agreement at least in part, and it includes the requisite consideration -- a promise for a promise.

In that respect Illinois law views renewals, for example, as newly issued policies. Hence the law might treat amendments in the same way. Indeed, Section 2006.30, which deals with "Required Benefits for Mental, Emotional or Nervous Disorders," says that a "contract will be considered a new policy or contract of insurance from the date of any reformation of the contract by rider, endorsement, <u>amendment</u>, or otherwise" (emphasis added).

But here the issue must be resolved in the courtroom, not the classroom. To that end consideration must be given not only to the bare words of the regulation and to contract law in general, but also to aids to statutory construction adduced by the parties or by this Court.

On that score it is significant that Section 2001 contains no definition similar to that in Section 2006.3. And other sections of the Code suggest that renewal, issuance and amendment are sometimes different concepts.

For example, Section 2015.20 reads:

> This Part shall apply to all group accident and health insurance policies and health maintenance organization group contracts that are issued, amended, delivered or renewed in this State on or after the effective date of this Part . . . .

That separate listing of issuance, amendment and renewal can fairly be read as a signal that those terms are not completely overlapping. Thus Section 2001.3, unlike Section 2006.30, refers only to policies "issued" and not to policies "amended," and it does not define "issued" to include policies that are amended. Although the issue is not free from doubt, this Court therefore concludes that the post-July 1, 2005 amendment to the Plan does not trigger the Section 2001.3 prohibition because it did not result in the issuance of a policy.

**Scope of Discovery**

What has been said to this point means that the discretionary clause in the LINA policy retains its force. And if these were all the relevant facts in the case, judicial review of LINA's decision to deny Barrett benefits would be limited to determining whether that decision was arbitrary and capricious. That in turn would look only to the administrative record from which LINA made its decision, so that no further discovery would be required and LINA and the Plan would be entitled to the protective order that they seek. But there's more to the analysis than that. Remember that LINA both made the final determination of Barrett's entitlement to benefits and was the party on the hook for paying the benefits.

Metropolitan Life Ins. Co. v. Glenn, 554 U.S. 105, 108 (2008) teaches that when a single entity both holds the purse and decides who gets paid from it:

> that this dual role creates a conflict of interest; that a reviewing court should consider that conflict as a factor in determining whether the plan administrator has abused its discretion in denying benefits; and that the significance of the factor will depend on the circumstances of the particular case.

And Glenn, id. at 117 (citations omitted) further explained that whether the conflict of interest affected the benefits decision requires additional information:

> The conflict of interest at issue here, for example, should prove more important (perhaps of great importance) where circumstances suggest a higher likelihood that it affected the benefits decision, including, but not limited to, cases where an insurance company administrator has a history of biased claims administration. It should prove less important (perhaps to the vanishing point) where the administrator has taken active steps to reduce potential bias and to promote accuracy, for example, by walling off claims administrators from those interested in firm finances, or by imposing management checks that penalize inaccurate decisionmaking irrespective of whom the inaccuracy benefits.

In sum, LINA's conflict of interest could have led it to make an arbitrary and capricious decision -- but more information is needed to assess the effect of the conflict. Hence Barrett ought to have the opportunity to seek out that information in discovery.

There is, however, a complication: Semien, 436 F.3d at 813-14 had earlier held that when an ERISA case is subject to the limited form of judicial review, a plaintiff must make a prima facie showing that the administrator's "impartiality can fairly be questioned" to obtain discovery beyond the administrative record. Barrett and LINA and the Plan debate whether Semien's holding survives post-Glenn: Barrett contends that Glenn abrogates Semien's requirement of a prima facie showing of a need for discovery, while LINA and the Plan say that Glenn's holding was about how a court ought to conduct its review but said nothing about discovery. District Judges in this Circuit have split on this issue, and our Court of Appeals has not yet addressed it.

To be sure, Glenn did not speak to whether it overruled the Semien holding,[2] but at a minimum Glenn clarifies how district courts ought to apply Semien and its statement that "the plan administrator's motivations should not be questioned absent a prima facie showing of some misconduct or conflict of interest." After all, Glenn, 554 U.S. at 108 left no doubt on that subject:

> Often the entity that administers the plan, such as an employer or an insurance
> company, both determines whether an employee is eligible for benefits and pays

---

[2] That fact really places no weight on the scales. Glenn came to the Supreme Court from a different Court of Appeals (the Sixth), and the Court's opinion made no effort to line up the authorities from around the country and to parse which did and which did not conform to the Court's ruling -- scarcely a surprising omission by the ultimate judicial authority, which does not view its role as that of a law clerk providing legal research for the lower courts in the federal judicial firmament.

> benefits out of its own pocket. We here decide that this dual role creates a conflict of interest . . . .

By definition that constitutes the prima facie showing required by Semien, entitling the plaintiff to further discovery.

When judicial review is deferential and there's no reason to doubt that the administrator made a decision on the merits, courts ought to block discovery. As in the review of federal administrative agency decisions, all that matters is that some evidence supports the administrator's decision. As Perlman v. Swiss Bank Corp. Comprehensive Disability Protection Plan, 195 F.3d 975, 982 (7th Cir. 1999) explained:

> But when there can be no doubt that the application was given a genuine evaluation, judicial review is limited to the evidence that was submitted in support of the application for benefits, and the mental processes of the plan's administrator are not legitimate grounds of inquiry any more than they would be if the decisionmaker were an administrative agency.

But that explanation has the flaw of circularity, somewhat akin to asking the person who hasn't had access to the inside of the black box to state which of its contents he or she want to see. Instead the second excerpt quoted earlier from Glenn provides insight into the scope of discovery that is appropriate in the conflict-of-interest situation involved here.

### Conclusion

Hence this Court denies the motion for reconsideration, and it declines to enter a protective order that limits Barrett's discovery at this time. It reminds the litigants, however, that the normal limits on the scope of discovery prescribed by Fed. R. Civ. P. 26(b)(1) still apply: Barrett is limited to seeking relevant information -- information that "need not be admissible at the trial" but "appears reasonably calculated to lead to the discovery of admissible evidence." If

either side encounters a problem with the application of that standard, the issue may be tendered to this Court by motion.

_____
Milton I. Shadur
Senior United States District Judge

Date: August 16, 2012